633 P.2d 695

Rhonda VELKOVITZ, Plaintiff-Appellant,

v.

PENASCO INDEPENDENT SCHOOL DISTRICT and American Manufacturers Mutual Insurance Company, a corporation, Defendants-Appellees and Cross-Appellants.

No. 4386.

Court of Appeals of New Mexico.

May 8, 1980.

Terry M. Word, Smith, Ransom & Gilstrap, Albuquerque, for plaintiff-appellant.

Stephen M. Williams, Shaffer, Butt, Thornton & Baehr, Albuquerque, for defendants-appellees and cross-appellants.

## OPINION

SUTIN, Judge.

This is a workmen's compensation case in which plaintiff was denied compensation benefits and she appeals. We affirm.

Plaintiff was an art teacher employed by defendant. Defendant and the Sipapu Ski Base had a cooperative program whereby Sipapu provided expert and certified ski instruction to defendant's students. Plaintiff was instructed by her supervisor to accompany the school ski club and racing team to Sipapu and supervise their activities as their sponsor/chaperon due to the fact that the ski area had experienced problems with shoplifting while students were present. She could ski for her own recreational purposes if she chose to do so.

On January 17, 1977, plaintiff was requested to escort the students to Sipapu. During a "free ski" period and while skiing alone, plaintiff fell and injured her knee. This accidental injury occurred during work hours, but the court found that it did not arise out of and in the scope of her employment, nor was it reasonably incident to her employment. We agree.

" * * * '[i]njury by accident arising out of and in the course of employment' shall include accidental injuries * * * as a result of their employment and while at work in any place where their employer's business requires their presence * * * *'" Section 52–1–19, N.M.S.A. 1978.

Plaintiff suffered accidental injuries as a result of her employment at a place where defendant required her presence. But did she suffer her accidental injuries "while at work"?

"While at work" is synonymous with "in the course of employment." *Thigpen v. County of Valencia*, 89 N.M. 299, 551 P.2d 989 (Ct.App.1976).

"Placing this construction upon the wording of our statute, we find the rule to be as follows: ' * * * an injury to an employee arises in the course of his * * * employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental [thereto].' " *McKinney v. Dorlac*, 48 N.M. 149, 152, 146 P.2d 867 (1944).

At the time of her accidental injury, plaintiff was an art teacher on a special errand. She was not engaged in the duties of her regular employment. The logical point at which her special mission began was the moment she left her home and it ended when she returned home. It is during this interim period that we determine the scope of her employment from the directions of her employer. *Edens v. New Mexico Health & Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976). *Avila v. Pleasuretime Soda, Inc.*, 90 N.M. 707, 568 P.2d 233 (Ct.App.1977).

Plaintiff's accidental injury arose out of a personal recreational activity during a special mission for the school. This is not an "Employer Sponsored Social Affair." See, Annot. *Workmen's Compensation: Injury Sustained while Attending Employer-Sponsored Social Affair as Arising Out of and In the Course of Employment*, 47 A.L.R.3d 566 (1973); 99 C.J.S. Workmen's Compensation § 221C (1958); 82 Am.Jur.2d Workmen's Compensation §§ 283, 284 (1976), nor does this case fall within the personal comfort doctrine. *Whitehurst v. Rainbo Baking Company*, 70 N.M. 468, 374 P.2d 849 (1962). The instant case involves a cooperative Sipapu school program sponsored by Sipapu for the recreational activity of the students. Plaintiff was not acting as an art instructor at the time of her injury. Her recreational activity was not related to her regular employment. She was not ordered by defendant to accompany the students. A request was made and she went voluntarily. Neither skiing alone nor with the children was a recreational activity undertaken for the benefit of the children, the school teacher or for the school. Her duties did not include protection and care of the students while skiing. Her special mission was limited to

supervision of students going and coming on the special mission and while present at the Sipapu Lodge. Because of the flux of factual circumstances surrounding such claims for workmen's compensation cases, we limit our opinion to the facts of this case.

The only New Mexico case on departure from employment is *Thigpen v. County of Valencia, supra.* Thigpen, a deputy sheriff in Grants kept horses. His superior officers knew this and permitted it. The water tank for the horses was about 100 yards from Thigpen's trailer. During the on-call period, Thigpen had to have his equipment and patrol car with him ready to go. Thigpen was found dead in the driver's seat of his patrol car with a shotgun on the floor. The trial court dismissed the widow's claim at the close of her case. In reversing and remanding for a new trial, the court said:

> The uncontradicted proof is that Thigpen did not depart from his employment while watering his horses because the employer knew and consented to this practice. The contradicted proof is that in watering his horses on the day in question, Thigpen was "ready to go and take a call." The showing is that Thigpen was performing the duties of his employment. [Id. 89 N.M. at 302, 551 P.2d 989.]

■ We read *Thigpen* to mean that an employee does not depart from his employment when an act performed is repeatedly done solely for the benefit or purpose of the employee if the employer knows and consents to this practice.

■ However, the death of Thigpen was unexplained. There was no evidence that an accident occurred while Thigpen was watering his horses. No reasonable inference can be drawn from the death of Thigpen that an accident occurred. Thigpen was found dead as to the time, place and circumstances that defines "course of employment." Section 52–1–19. But this is not sufficient to constitute a compensable claim. Section 52–1–28. The result is inconsistent with the facts stated.

■ Nevertheless, *the rule* in *Thigpen* is inapplicable here. The general rule is that if the act performed is solely for the benefit or purpose of the employee or a third person, there may be no recovery of workmen's compensation benefits. *Deal v. Pilot Life Insurance Company*, 20 N.C.App. 30, 200 S.E.2d 420 (1973); *Fisher Body Division, G.M. Corp. v. Industrial Com'n*, 40 Ill.2d 514, 240 N.E.2d 694 (1968); *Stoddard v. Industrial Commission*, 23 Ariz.App. 235, 532 P.2d 177 (1975).

1(A) Larson's Workmen's Compensation Law § 22.00, 5–71 (1979) fixes the standards for recreational and social activities as follows:

> Recreational or social activities are within the course of employment when
>
> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
>
> (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
>
> (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

We can find nothing in the facts of this case which come within the bounds of subsections (2) or (3). This area of the law is so sensitive that conclusions reached by the courts are not uniform. See, *City Council of Augusta v. Nevils*, 149 Ga.App. 688, 255 S.E.2d 140 (1979); *Crowe v. The Home Indem. Co.*, 145 Ga.App. 873, 245 S.E.2d 75 (1978); *Teems v. Aetna Casualty & Surety Company*, 131 Ga.App. 685, 206 S.E.2d 721 (1974); *Dorsch v. Industrial Commission*, 185 Colo. 219, 523 P.2d 458 (1974) (injured while skiing); *Diperri v. Boys Brotherhood Republic of N.Y., Inc.*, 31 N.Y.2d 215, 335 N.Y.S.2d 405, 286 N.E.2d 897 (1972); *Rausch v. Workmen's Compensation Appeals Bd.*, 274 Cal.App.2d 357, 79 Cal.Rptr. 148 (1969); *Kaplan v. Zodiac Watch Company*, 20 N.Y.2d 537, 285 N.Y.S.2d 585, 232

N.E.2d 625 (1967); *Davis v. Newsweek Magazine*, 305 N.Y. 20, 110 N.E.2d 406 (1953).

Workmen's compensation benefits were allowed in *Dorsch, supra,* a skiing accident case. Dorsch was employed as a fulltime bartender. His remuneration consisted of an hourly wage of $2.25, free meals and a ski pass. The ski pass was sold to the public for $100.00 a ski season. As an inducement, it was offered to Dorsch at the reduced rate of $5.00. Before going on the afternoon shift, while skiing, Dorsch was injured. The standards fixed by the court were those applicable *where the employer's principal business was recreation.* These standards are not applicable to the instant case which involved a school teacher not employed by the Sipapu Lodge.

■ Generally speaking, where an employee is free to use time for her own individual affairs and an injury arises during this time, the injury is not compensable, *Teems, supra* even in the recreational area. *Davis, supra.* Where, however, with the knowledge and acquiescence of an employer, as stated in *Thigpen, supra,* a resident employee of a summer camp distant from his home was injured during *off-duty hours* while regularly engaged in gymnastics in a recreational hall of an adjacent campus, the employee was engaged in a "reasonable activity" risk which constituted an "incident of his employment." Recovery of compensation benefits were not precluded on the theory that the gymnastics constituted a "personal" act. *Diperri, supra.*

We think it is quite clear that plaintiff, while engaged in the hazardous or risky act of skiing during working hours, was indulging in a personal recreational activity unrelated to her employment as a teacher or sponsor, except as it might better fit her physically to perform her duties as a teacher in refreshing her body and mind. Plaintiff was not injured by an accident that arose out of and in the course of her employment, "while at work."

■■ The remaining question is whether the accident which occurred while skiing

alone was reasonably incidental to her employment. Section 52–1–28(A)(2). A risk is "incidental to the employment" only where the risk belongs to or is connected with what an employee must do in fulfilling her contract. *Martin v. Kralis Poultry Co., Inc.,* 12 Ill.App.3d 453, 297 N.E.2d 610 (1973); *Queen City Furniture Company v. Hinds,* 274 Ala. 584, 150 So.2d 756 (1963). An employer is not liable where an employee voluntarily exposes herself to a danger that is not incidental to her employment. *Trunkline Gas Company v. Industrial Commission,* 40 Ill.2d 542, 240 N.E.2d 655 (1968).

"What is reasonably incident to the employment depends upon the practices permitted in the particular employment and on the customs of the employment environment generally." *Whitehurst, supra,* 70 N.M. 473, 374 P.2d 849. Skiing alone at Sipapu was not a practice permitted in plaintiff's employment as a teacher or as a sponsor of the school's students. It was not incidental to her employment.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

At the outset, it is necessary to note that the historical facts are undisputed. I also believe it is necessary to set forth a part of the testimony of Mr. Abe Aguilar, the Principal of the Penasco High School, where plaintiff was employed.

Q. Would you briefly describe for the Court what that ski program is and how it existed in 1976, '77?

A. It's been—it's been—it's a co-operative program between the Penasco Schools and the Sipapu Ski Resort. We send students there during the school season, when they are ready for them, once a day, once a week, for possibly two hours and we consider it as an extracurricular activity, similar to what—the experience they

would get, if they participated in other activities, such as basketball, baseball and that type of deal. With the exception, that in this case, since we don't have a faculty to do the instructing, we simply provide the transportation to the lodge. The actual charge or the actual instruction is done by the personnel at the lodge.

Q. How long has that program been going on for, the co-operative program, between—

A. Ten or twelve years, as I can recall.

Q. Were you aware, or was the school aware of, Mr. Aguilar, that school personnel would go skiing or could go skiing?

A. Yes.

Q. Did you—you did not make it mandatory?

A. No, sir.

\* \* \* \* \* \*

Q. Now, the—and, you were aware that the sponsors who were going up with the team and with the club, or the class, made a practice of skiing with the students?

A. Yes. In fact, that was part of the basis for selecting them. They were—if they were willing to ski or if they were interested in the activities; in other words, I didn't want to send anybody there that wasn't interested in the program to start with.

\* \* \* \* \* \*

Q. As a matter of fact, would it not,—not be preferable to have a teacher upon the slopes with the students, so that they could see that the students were behaving themselves there, as well as in the lodge?

A. Very definitely.

A case of particular applicability to a situation such as this is *McKinney v. Dorlec*, 48 N.M. 149, 146 P.2d 867 (1944) wherein our Supreme Court adopted the following language from *Young v. Department of Labor and Industries*, 200 Wash. 138, 93 P.2d 337, 339 (1939):

[A]n injury to an employee arises in the course of his \* \* \* employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental [thereto].

Our Supreme Court in *Wilson v. Rowan Drilling Co.*, 55 N.M. 81, 227 P.2d 365 (1950) held:

We are committed to the doctrine that the Workmen's Compensation Act must be liberally construed, and reasonable doubts resolved in favor of employees. [Citations omitted.] So construing the act, we conclude that when an employee is sent by his employer on a special mission away from his regular work; or by the terms of his contract of employment he is burdened with a special duty incidental to, but aside from the labor upon which his wages are measured; while on such mission, or in the performance of such duty, the employee is acting within the course of his employment \* \* \* If an employee is accidentally injured while on such mission, or in the performance of such duty, the injury arises out of and in the course of his employment.

In the case of *Edens v. New Mexico Health and Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976) the deceased, Betty Jean Edens, and three other employees of the H.S.S.D. were ordered to attend a special two-day meeting in Santa Fe. They were requested to form a car pool and to return overnight to Albuquerque between the two sessions in order to save fuel and reduce travel costs. The four employees met at a designated place and proceeded as a group to Santa Fe in Eden's car. At the close of the first day's session, the four returned to the meeting place. After letting the other three off, Mrs. Edens drove out of the parking lot and immediately thereafter was involved in the accident which resulted in her death. The trial court found, among other things, that the accident did not arise out of, nor was it incidental to, her employment.

In reversing the trial court our Supreme Court stated the following:

We have previously held that, where the historical facts of the case are undisputed the question whether the accident arose out of and in the course of the employment is a question of law.

\* \* \* \* \* \*

Edens was sent on a special mission to the meeting in Santa Fe, away from her regular work at the Bernalillo County North Valley Office. The question remains, however, whether she was performing that special mission at the time of the fatal accident.

\* \* \* \* \* \*

In this regard, the following rules, as stated in 1 Larson on Workmen's Compensation Law, § 14.00 Meaning of "Course of Employment" (1972), are applicable:

"An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he is fulfilling his duties or engaged in doing something incidental thereto."

\* \* \* \* \* \*

Each of the four employees who went that day to Santa Fe was the [sic] on a special mission for their employer HSSD, and each was within the scope of his employment from the moment he left home until the moment he returned home at the end of the day.

The holding in the case of *Robards v. New York Division Electric Products, Inc.*, 33 A.D.2d 1067, 307 N.Y.S.2d 599 (1970) is also applicable in a situation such as this:

Appellants contend that the accident did not arise out of and in the course of employment. Where an employee, as part of his duties is directed to remain in a particular place or locality until directed otherwise or for a specified length of time "the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any reasonable activity at that place, and if he does so the risk inherent in such activity is an incident of his employment." Quoting

*Matter of Davis v. Newsweek Mag.*, 305 N.Y. 20, 28, 110 N.E.2d 406, 409 (1953).

The facts of this case unquestionably bring it within the ambit of the foregoing authorities. The compelling factor that makes judgment for the plaintiff mandatory is that the plaintiff was not only expected to ski, she was authorized to do so. As, Mr. Aguilar testified, he purposely chose a teacher who was interested in skiing. He also thought that it was a good idea for the teacher to be out on the slopes where the students were so she could better supervise them. This accident arose out of and in the course of plaintiff's employment. I would reverse the judgment of the trial court.